UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| C. BICKHAM DICKSON, III, ET AL | CIVIL ACTION NO. 5:11-cv-0352 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| SKLARCO L.L.C. and PETROHAWK PROPERTIES, L.P. | MAGISTRATE JUDGE MARK HORNSBY |

## MEMORANDUM ORDER

The Plaintiffs, C. Bickham Dickson, III, James S. Dickson, Denise M. Dickson, Michael R. Dickson, Addie S. Dickson, and Martha A. Dickson Bigler (collectively "Plaintiffs"), come before this Court with their Motion in Limine to Exclude Testimony of Kris L. Terry ("Terry"). [Record Document 58]. The Defendant, Petrohawk Properties, L.P., seeks to introduce the testimony of Terry as an expert in the oil and gas industry for the purpose of assisting in the interpretation of the contractual terms of the parties' leases. [Record Document 60]. Given the ambiguous contractual provisions contained within the leases, expert testimony can provide context to the purpose of midstream pipeline systems in the industry, as well as elucidate for the Court the custom and usages of contractual and lease terms in this industry as they relate to midstream operations and post-production services that have an effect on the value of gas and royalties. As a result, after considering the parties' filings, this Court finds that Terry's testimony is admissible to a limited extent in both phases of the bifurcated trial. While Terry's testimony will be permitted to provide context to technical terms of art in the oil

and gas industry, she can neither offer legal conclusions concerning the contractual duties of the parties nor offer any conclusion that could threaten the agreed upon trial structure based on the specific exclusions outlined below.

Thus, for the reasons stated below, **IT IS ORDERED** that the Plaintiffs' Motion in Limine to Exclude Testimony of Kris L. Terry [Record Document 58] is **GRANTED in part** and **DENIED in part**.

I.  Factual and Procedural Background

In the present case, the dispute between the Plaintiffs and Defendant arose from the terms contained within two oil, gas, and mineral leases ("Leases") on property that the Plaintiffs owned in Caddo Parish, Louisiana. Record Document 32-2, p.2. The land was leased by the Plaintiffs in two agreements with Sklarco L.L.C., which was the sole lessee, beginning in September 2005 and recorded in the Conveyance Records of Caddo Parish in December 2005. Id., Record Document 34, p.1. The Leases contained both typical "Bath" forms and amended post-production cost clauses that were identical in each lease. Record Document 1-2, Exhibit 1 In Globo. While Exhibit "A" provided a description of the property that was covered by the Leases, Exhibit "B" attached provisions that were included in addition to the other previous provisions contained within the Leases' Bath provisions. Id. In February 2008, a partial sublease of oil, gas, and mineral leases between Sklarco L.L.C. and Petrohawk became effective. Record Document 34-1, p.3.[1] The Plaintiffs then granted an extension of this sublease in July

---

[1] With that sublease, the Defendant acquired rights in the Leases "to the depths from and below the Hosston Zone, Reservoir A, Cedar Grove Field, as defined by the

2008, extending the primary terms of the Leases until August 2011. Id.

The principal dispute in this case centers on the interpretation of these provisions and the intent of the parties to deduct post-production costs from the Plaintiffs' royalties. As this Court previously found, despite arguments by both the Plaintiffs and Defendant to the contrary, there exists a genuine issue of intent regarding what post-production costs were deductible from the Plaintiffs' royalties. Record Document 44, p.19. In denying the motions for summary judgment by each party, this Court found that two provisions contained within the Leases addressed the deduction of post-production costs, making the intention of the parties with regard to these costs ambiguous. Id., pp.15-18.

In its analysis of the four corners of the contract, the Court reasoned the inclusion of the standard "market value lease" provision in Paragraph 4, by itself, would likely permit the finding that post-production transportation and gathering costs were deductible. Record Document 44, p.12.[2] However, by including a second provision in

---

Louisiana Office of Conservation Order No. 967, dated January 28, 1976." Record Document 44, p.3.

   [2] The Leases stated in Paragraph 4:

> The royalties to be paid by Lessee are . . . on gas, including casinghead gas, or other gaseous substance produced from said land and sold or used off the premises or for the extraction of gasoline or other products therefrom, the market value at the well of one-fifth (1/5) of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-fifth (1/5) of the amount realized from such sale . . . .

Record Document 1-2, Exhibit 1 In Globo. The Court reasoned: "If this were the

the Leases in Paragraph 8 of Exhibit "B" that related to post-production costs,[3] the Court determined there was an issue of fact as to the intent of the parties regarding what costs were deductible. Record Document 44, p.15. The purpose of Exhibit "B" in general was to alter and amend the form contract and the Bath provisions, including Paragraph 4's provision relating to post-production costs. As the Court explained: "Why, then, was [Paragraph 8] added to the contract? At the very least, the placement of the provision Exhibit 'B', as well as the language contained within it, raises issues of fact as to the parties' intent." Id. Thus, this Court found that the Leases were not unambiguous and there remained a genuine factual issue of intent to be determined at trial. Id., p.19.

In response to the Defendant's identification of Terry, an oil and gas consultant, as an expert witness, the Plaintiffs filed a motion in limine to exclude her testimony.

---

only provision in the Leases that addressed the deduction of post-production costs, then the Court's inquiry would end here. However, the Leases include another provision which addresses the same issue." Record Document 44, p.12.

[3] Paragraph 8 of Exhibit "B" of the Leases stated:

> The parties agree that post production costs may be deducted from Lessor's share of the proceeds from the sale of crude oil, natural gas or other minerals payable as royalty under this Lease insofar and only insofar as such costs either enhance the value of the product being sold and the price obtained for such product or are required to make the product marketable. Without limitation upon the foregoing, the treating, processing or dehydrating of natural gas to meet pipeline quality specifications shall be deemed to enhance the value of the product being sold.

Record Document 1-2, Exhibit 1 In Globo.

Record Document 58. The Plaintiffs claim that Terry's opinions and expert report will not assist this Court and are not relevant to determining any factual issue concerning the contractual intent of the parties. Record Document 58-1. As a result, the Plaintiffs assert that her testimony is inadmissible during the liability phase of the trial. Id. In opposition to this motion, the Defendant has asserted a variety of justifications that permit admission of the expert testimony, which the Plaintiffs responded to with a Reply Memorandum in Support. Record Documents 60 and 63. This Court will now consider whether Terry's testimony will be admissible at trial.

**II.   Motion in Limine Standard**

As the United States Court of Appeals for the Fifth Circuit explained, motions in limine are made prior to a trial to prohibit the opposing party from offering, mentioning, or even alluding to evidence on an issue that is prejudicial enough to the moving party that a timely motion striking the evidence or an instruction to the jury to disregard the evidence cannot overcome its prejudicial impact. See O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 n.1 (5th Cir. 1977). In making this determination, a district court has broad discretion concerning the admissibility and exclusion of relevant evidence when the probative value substantially outweighs the risk of unfair prejudice, confusion, delay, wasting time, or needless presentation of cumulative evidence. Fed. R. Evid. 403; Int'l Ins. Co. v. RSR Corp., 426 F.3d 281, 299-300 (5th Cir. 2005); see French v. Allstate Indem. Co. 637 F.3d 571, 578 (5th Cir. 2011) (finding that in a bench trial the district court has broad discretion to weigh the probative and prejudicial value of

evidence under Rule 403). Such deference is given to a district judge "because of his or her first-hand exposure to evidence and familiarity with the course of the trial proceedings." Int'l Ins. Co., 426 F.3d at 300.

More specifically, Federal Rule of Evidence 702 provides for the admissibility of testimony by a qualified expert if that "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; French, 637 F.3d at 578 (explaining a district court has wide discretion to determine whether an expert's testimony will assist the factfinder, particularly when that court is the trier of fact). The admission of expert testimony to provide context on an industry practice and interpret contractual provisions specific to such an industry falls within a district court's discretion, so long as the explanation provided by the expert is needed to more accurately comprehend the meaning of technical terms used within that industry or trade. Compare Phillips Oil Co. v. OKC Corp., 812 F.2d 265, 281 (5th Cir. 1987) (finding the district court's admission of expert testimony by individuals experienced in the oil and gas accounting field for the purpose of "obtaining explanation of the technical meaning of terms used in the net profits accounting provisions of the Farmout seems prudent"), with Fid. Nat'l Title Ins. Co. v. Doubletree Partners, L.P., 866 F. Supp. 2d 604, 615 (E.D. Tex. 2011) (finding inadmissible expert testimony construing and interpreting contract provisions in the absence of specialized trade usage or the assertion of specialized meaning).

III. Law and Discussion

**A. Expert Testimony on the Customary Meaning of Oil and Gas Terminology**

As stated above, the issue at dispute in this case involves the interpretation and ambiguity created by separate provisions in the Leases and their addendums, specifically Paragraph 8 of Exhibit "B." As the Louisiana Supreme Court explained in Frey v. Amoco Production Co., "Mineral leases are construed as leases generally and, wherever pertinent, codal provisions applicable to ordinary leases are applied to mineral leases." 603 So. 2d 166, 171 (La. 1992); see La. Rev. Stat. § 31:2 (2014); Musser Davis Land Co. v. Union Pac. Res., 201 F.3d 561, 565 (5th Cir. 2000); Alyce Gaines Johnson Special Trust v. El Paso E. & P. Co., 773 F. Supp. 2d 640, 644 (W.D. La. 2011).

The Louisiana Civil Code makes clear that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045 (2014). When the language and words contained in a contract are clear and explicit, leading to no absurd consequences, no further interpretation may be made to determine the parties' intent, and the contract should be interpreted by reference only to the four corners of the agreement. La. Civ. Code art 2046 (2014); Tammariello Props., Inc. v. Med. Realty Co., 549 So. 2d 1259, 1263 (La. App. 3d Cir. 1989). When in dispute, a court's role is to determine the intent of the parties to a contract and the obligations created by it, as well as to interpret a contract's provisions in light of each other to give the provisions the meaning suggested by the contract as a whole. See La. Civ. Code

arts. 2045, 2050 (2014).

This Court previously determined that two provisions of the Leases called into doubt the intent of the parties with regard to what post-production costs were to be deducted from the Plaintiffs' royalties. Record Document 44, pp.17-19. After this decision by the Court, the Defendant provided Terry's report to the Plaintiffs, and they assert Terry "expresses numerous opinions about the leases at issue." Record Document 58, p.2. In their motion in limine to exclude this testimony, the Plaintiffs argue that there is no need for expert assistance in interpretation of these provisions for the Court and that it is only an issue of the contractual intent of the parties–not an issue of the terminology of the oil and gas industry. Record Document 58-1, pp.5-7. Without personal knowledge of the parties' intent, the Plaintiffs argue that Terry's testimony is merely a "thinly veiled attempt to offer legal opinions and conclusions" for this Court to consider. Id., p.4.

Under the Louisiana Civil Code, however, contracts containing technical words and terms of art must be given technical meaning when "the contract involves a technical matter." La. Civ. Code art. 2047 (2014). If susceptible to different meanings, the words in a contract must be interpreted as having "the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048 (2014). When there is a doubtful provision, a court should interpret it in light of the "nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code art. 2053

(2014); see Red River Parish Port Comm'n v. Headwaters Res. Inc., 698 F. Supp. 2d 684, 689 (W.D. La. 2010). The question of whether ambiguity exists in a contract's language is a question of law for a court when it is unclear, susceptible to more than one reasonable interpretation, or the parties' intent cannot be ascertained. Red River Parish Port Comm'n, 698 F. Supp. 2d at 689 (citing Gebreyesus v. F.C. Schaffer & Assocs., Inc., 204 F.3d 639, 643 (5th Cir. 2000); Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314, 320 (5th Cir. 1991)).

Given that this Court determined that the Leases' provisions were ambiguous and the intent of the parties could not be ascertained, under Louisiana law, the Court may consider the custom of the oil and gas industry to determine the true intent of the parties, as well as extrinsic evidence, including expert testimony, to determine such industry customs. See Henry v. Ballard & Cordell Corp., 418 So. 2d 1334, 1340 (La. 1982). When applying Louisiana contract law, the Fifth Circuit has found it "prudent" for a district court to admit expert testimony from an individual experienced in a particular field for the purpose of receiving an explanation of the technical and customary meaning of terms used in particular provisions. Phillips Oil Co. v. OKC Corp., 812 F.2d 265, 281 (5th Cir. 1987) (finding it was consistent with Louisiana Civil Code Article 2047 and Federal Rule of Evidence 702 to permit expert testimony by an oil and gas accountant). The Fifth Circuit determined in Phillips Oil Co. that the technical terms in the contract were relevant under Louisiana law, and as a result, it would be improper to ignore Civil Code Article 2047's dictate by not applying the customary and technical meaning of the

words in the given industry. Id. at 282. "What better way," the Fifth Circuit reasoned, "is there to discover the technical meaning [of a word or phrase] than through the use of Federal Rule of Evidence 702." Id.

In their opposition to the Plaintiffs' motion in limine, the Defendant correctly observed the ability of this Court to consider expert interpretation of ambiguous contractual provisions, and both state and federal courts have continued to reaffirm this power in a variety of circumstances when applying Louisiana law. Record Document 60, pp.5-7; see, e.g., Temple v. McCall, 720 F.3d 301, 305 (5th Cir. 2013) (finding it is appropriate to use expert testimony to determine the received usage of an ambiguous phrase in the context of a trade); Mariner Energy, Inc. v. Devon Energy Prod. Co., 690 F. Supp. 2d 558, 571-73 (S.D. Tex. 2010) (applying Louisiana law to find that while it is impermissible to allow expert testimony to insert or add a term into an agreement between parties, such testimony is admissible for the purpose of understanding the meaning of technical terms in an agreement); Transp. Ins. Co. v. Prof'l Eng'g Consultants, Inc., No. 00-881-D-1, 2002 WL 34367717, at *1 & n.5 (M.D. La. Jan. 15, 2002) ("[C]ase law supports the use of expert evidence to assist the court in interpreting words of art or technical terms in a contract."); Jefferson Disposal Co. v. Jefferson Parish, 459 So. 2d 639, 642 (La. App. 5th Cir. 1984) (finding no error in the use of expert testimony in shedding light on the received usage of technical terms).

When read in concert, Paragraph 4 and Paragraph 8 of Exhibit "B" of the Leases are ambiguous, and the parties' intent cannot be clearly ascertained without reference

to custom and usage in the oil and gas industry. See Red River Parish Port Comm'n, 698 F. Supp. 2d at 689. With the inclusion of Paragraph 8 and its terms and phrases, like "post production costs," it is uncertain what costs the parties intended to deduct from the royalty payments that were previously expressed in Paragraph 4. It follows that expert testimony can help explain any customary language and usage of technical terms contained in both provisions, despite the arguments to the contrary by the Plaintiffs that there are no words or terms of art that require clarification for the Court. Record Document 63, p.9; see Phillips Oil Co., 812 F.2d at 281; Henry, 418 So. 2d at 1340. With the expert testimony, this Court will be able to more accurately determine the intent of the parties with regard to the provisions found in Paragraph 8 and the technical meaning of its words in the context of the oil and gas industry. Phillips Oil Co., 812 F.2d at 281. It is the role of this Court to determine the object of the Leases and what deductions from the royalties were contemplated by the parties, and assistance by a party's expert when there are doubtful provisions is well within this Court's discretion under Louisiana law. See La. Civ. Code art. 2048 (2014); Henry, 418 So. 2d at 1340.[4]

---

[4] It is impermissible for Terry to use her testimony to insert or add a term to the Leases or their provisions that is not already included; she is only allowed to interpret the customary and technical usages or the provisions' words and phrases, as well as provide background information on midstream operations in the oil and gas industry. See Mariner Energy, Inc., 690 F. Supp. 2d at 571-73. In Mariner Energy, Inc., the court explained:

> While Mariner may not use [the expert's] testimony to add "storm damage" as a term in the Agreement, [the expert's] testimony is admissible to explain the meanings of "Abandonment Expenses" and "abandonment operations." Those technical terms are in the Agreement and are not fully defined. [The expert's] affidavit suggests that the

11

**B. Expert Testimony Offering Legal Conclusions**

The Plaintiffs also contend that federal district courts in Louisiana reject efforts by experts to offer their opinions on contract interpretation, reasoning that offering such opinions on the contractual duties of the different parties will amount to a legal conclusion. Record Document 58-1, p.6. The Plaintiffs' memorandum in support of their motion in limine, nevertheless, continues on to express that the use of such expert testimony to interpret a contract is admissible when a contract employs "specific, technical or other specialized knowledge to clarify terms of art, science, trade or other industry specific language." Id., p.6-7.[5] However, given the Federal Rules of Evidence and the fact that Terry is not licensed to practice law in the State of Louisiana, she is not permitted to offer any legal conclusions on the contractual responsibilities of the parties under the Leases. See C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001) (citing Fed. R. Evid. 702, 704; Owen v. Kerr-McGee Corp. 698 F.2d 236, 240 (5th Cir. 1983)).

**C. Specific Limitations on Expert Testimony in the Present Bifurcated Case**

The Plaintiffs further argue that the issue of whether post-production services increased the dollar value of the gas in this case has been reserved by the Court for any

---

> technical definitions of the terms are not the same as the definitions urged by Devon. . . . The court will consider [the expert's] affidavit for the purpose of defining those terms.

Id. at 573 (citation omitted).

[5] Quoting Big Real Estate Servs. Inc. v. Monticello Ins. Co., No. Civ.A. 04-3408, 2006 WL 461706, at *3 (E.D. La. Feb. 27, 2006).

second half of this bifurcated matter. The Plaintiffs correctly quote the Court's minutes, which state:

> Counsel agreed that the questions of law relating to the interpretation of the contract and questions of fact related to the intent of the contracting parties falls into the liability category. . . . Counsel also agreed that . . . *whether a particular expense enhanced the value of the product*, and thus is deductible under the contract, *falls into the damages category*.

Record Document 58-1, p.10. The question before the Court is whether the conclusions in Terry's report trespass on that reservation.

The Court notes that Terry's report at the outset purports to contain an opinion "about the impact on the value and price of gas of post-production services such as gathering, treating and transportation, including the gathering and treating of gas on the gathering system involved in this matter." Record Document 58-2, p.2. Terry's report contains no such specific calculations as to what is the dollar value of post-production services on the price of gas in this case. However, her report does contain several general conclusions that certain actions by Petrohawk (such as the contract with Hawk Field Services) did increase the value of the gas in this case to the Plaintiffs. While the facts that lead Terry to her conclusions may be useful to the Court in understanding the contract terms, her conclusions threaten to dismantle the agreed upon structure of this bifurcated proceeding. Such conclusions, if made by the witness at trial, would require the Plaintiffs to present testimony that such post-production services did NOT increase the value of their gas and to counter with specific dollar calculations to rebut Terry's conclusions. Thus, the agreed upon structure crumbles.

13

The concern of the Court is not whether Terry's conclusions are relevant in determining if the Defendant's actions enhanced the value of the gas. Rather, it is the Court's concern that such conclusions are not appropriate during the liability phase of this trial. As a result, to preserve the bifurcated nature of this matter, the Court will not allow the following specific conclusions from Terry's report: 1.) the statement in paragraph 23, which explains, "This decision in my opinion benefitted both the royalty owners and Petrohawk."; 2.) the entire content of paragraph 24; 3.) the entire content of paragraph 25; and 4.) the entire content of paragraph 32.

Therefore, despite the Plaintiffs' argument that the Leases do not require clarification, this Court's prior ruling demonstrates that the intent of the parties is not clearly ascertainable by examination of the four corners of the Leases alone. Expert testimony assisting the Court on the operation of the oil and gas industry and on the technical interpretation of the words, terms of art, and phrasing of the Leases' provisions is permitted under the Louisiana Civil Code, the Federal Rules of Evidence, and established case law. Nevertheless, given the agreed upon bifurcated structure of the case, the scope of Terry's testimony is subject to the restrictions outlined above, and any other objections to her opinions will go to the weight and credibility of her testimony, but not to its admissibility.

## IV. Conclusion

Thus, for the reasons set forth above, **IT IS ORDERED** that the Plaintiffs' Motion in Limine to Exclude Testimony of Kris L. Terry is **GRANTED in part** and **DENIED in**

**part**. Record Document 58. She will not be permitted to offer any legal conclusions on the contractual responsibilities of the parties under the Leases, but she is permitted to testify on the interpretation of words, terms of art, and the custom and usages of such terms within the oil and gas industry as they relate to the Leases' provisions. She is also permitted to testify as to the purpose and function of midstream systems in the oil and gas industry. Finally, subject to the exclusion of the opinions and conclusions found in paragraphs 23, 24, 25, and 32, Terry is permitted to testify as to the content of the remaining paragraphs of her expert report.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 9th of September, 2014.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE